1              **UNITED STATES DISTRICT COURT**
               **FOR THE DISTRICT OF NEW JERSEY**
2
3     _____

      **IN RE: INVOKANA (CANAGLIFLOZIN)**
4                                            **CIVIL ACTION NUMBER:**

5                                            **3:16-MD-02750(BRM)**

6                                            **STATUS CONFERENCE**
      **PRODUCTS LIABILITY LITIGATION**
7
      _____
8          Clarkson S. Fisher United States Courthouse
           402 East State Street
9          Trenton, New Jersey 08608
           January 12, 2017
10
11    **B E F O R E:**        THE HONORABLE BRIAN R. MARTINOTTI
                              UNITED STATES DISTRICT JUDGE
12                            THE HONORABLE LOIS GOODMAN
                              UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24    **Certified as True and Correct as required by Title 28, U.S.C.,**
      **Section 753**
25    **/S/ Regina A. Berenato-Tell, RDR, CRR, CCR**

 1 | **A P P E A R A N C E S**:

 2 |

 3 | **ATTORNEYS FOR THE PLAINTIFFS:**

 4 | SEEGER WEISS
   | BY:  CHRISTOPHER A. SEEGER, ESQUIRE
   |      JEFFREY S. GRAND, ESQUIRE

 5 |

 6 | CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
   | BY:  JAMES CECCHI, ESQUIRE
   |      DON ECKLUND, ESQUIRE

 7 |

 8 | DOUGLAS & LONDON
   | BY:  MICHAEL LONDON, ESQUIRE
   |      VIRGINIA ANELLO, ESQUIRE

 9 |

10 | BERNSTEIN LIEBHARD, LLP
   | BY:  JESSICA KELLER, ESQUIRE

11 | NAPOLI SHKOLNIK, LLC
   | BY:  HUNTER SHKOLNIK, ESQUIRE

12 |

13 | WEITZ & LUXENBERG, P.C.
   | BY:  DANIELLE GOLD, ESQUIRE

14 | BURG, SIMPSON, ELDREDGE, HERSH, JARDINE, P.C.
   | BY:  SETH A. KATZ, ESQUIRE

15 |

16 | LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.C.
   | BY:  TIMOTHY M. O'BRIEN, ESQUIRE

17 | GOMEZ TRIAL ATTORNEYS
   | BY:  JOHN GOMEZ, ESQUIRE

18 |

19 | AVRAM BLAIR & ASSOCIATES
   | BY:  AVRAM BLAIR, ESQUIRE

20 | BEASLEY ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
   | BY:  DANIELLE WARD MASON, ESQUIRE

21 |

22 | ROBINS, KAPLAN, LLC
   | BY:  HOLLY DOLEJSI, ESQUIRE

23 | EXCOLO LAW, PLLC
   | BY:  KEITH ALTMAN, ESQUIRE

24 |

25 | EISBROUCH, MARSH, LLC
   | BY:  DAVID EISBROUCH, ESQUIRE

1 | **A P P E A R A N C E S   C O N T I N U E D . . .**

2

3 | IRPINO LAW FIRM
BY:  ANTHONY IRPINO, ESQUIRE

4

LOPEZ, McHUGH
5 | BY:  JOSH MANKOFF, ESQUIRE

6 | MICHAEL HINGLE & ASSOCIATES
BY:  KEVIN STEELE, ESQUIRE

7

BRYAN PFLEGER,  ESQUIRE
8

WEBSTER LAW FIRM
9 | BY:  JASON WEBSTER, ESQUIRE

10

11

**ATTORNEYS FOR THE DEFENDANT:**
12

DRINKER BIDDLE & REATH, LLP
13 | BY:  MICHAEL C. ZOGBY, ESQUIRE

14 | TUCKER ELLIS, LLP
BY:  MOLLIE F. BENEDICT, ESQUIRE
15 | JOHN Q. LEWIS, ESQUIRE

16

17

18

19

20

21

22

23

24

25

—— Status Conference - 1/12/17 ——

```
 1   (In open court.  Thursday, January 12, 2017.  10:30  a.m.)
 2           JUDGE MARTINOTTI:  You can be all be seated.  I'm
 3   sorry.
 4           Okay.  Counsel, welcome to New Jersey, also, known as
 5   the garden state, notwithstanding your perception driving up
 6   and down the Turnpike.
 7           I just want to welcome everyone and introduce our staff
 8   to you, and then we'll get some appearances in a few moments.
 9           Seated to my left is Judge Goodman.  She is the
10   Magistrate Judge that will handle all the fun discovery issues
11   and other ancillary issues that you may have as the litigation
12   progresses.
13           Seated right in front of me is my Courtroom Deputy,
14   Dana, who you will be interacting with on various scheduling
15   issues.
16           To her right is Regina, our court reporter.
17           At the table to my right is Jennifer.  Some of you who
18   appeared before me in state court may remember her.  She was
19   my law clerk several years ago, and I'm happy has joined me
20   here in Federal Court.
21           In the front row to your right, my left, is Phil, Judge
22   Goodman's law clerk.
23           And seated at the table is Kim, the spy from the
24   clerk's office.
25           We are all looking forward to working with you on this
```

Status Conference - 1/12/17

1   litigation.  I am sure with all counsels' cooperation and all
2   working together we can move this litigation forward
3   efficiently, and, hopefully, toward a resolution.  I'm in a
4   unique position today, as I stand here as a federal judge,
5   having served as a State Court Judge for 14 years, the last
6   seven of which dealing with MCLs, which is multi-county
7   litigation and mass torts in Bergen County.  I have worked
8   with many federal judges throughout that time.  I am a
9   proponent of federal and state cooperation and will continue
10  that theme here now as I stand as a federal judge.
11      I will be working with the State Court judges
12  coordinating issues to avoid duplication and unnecessary work.
13  The goal is to keep this litigation moving efficiently, not
14  reinventing the wheel, and, hopefully, all pulling together so
15  we can resolve this matter.  I have reviewed the submissions
16  and application for those who desire to be part of several
17  committees.  We'll talk about that in a few moments.
18      Now that you know who we are, I'm going to ask that
19  everyone get up, tell me who you are, where you're from,
20  approximately how many cases you have, and if it is not
21  tipping your hand how many cases you think you're going to
22  have, if you have any cases pending in any other
23  jurisdictions, whether it is state or I know there's another
24  federal issue going on, and one sentence or less if you have
25  any mass tort or MDL experience.

Status Conference - 1/12/17

1        Sir?

2            MR. SEEGER:  Good morning, Your Honor.  Chris Seeger.

3    I have a little bit of mass tort experience.  I have done a

4    number of them, your Honor.  We have probably somewhere in the

5    neighborhood of two to 300 cases.  We don't have -- we have a

6    fraction of those filed so far, but they're getting filed.

7    And that's it.  Did you need anything else?

8            JUDGE MARTINOTTI:  That's it.

9            MR. CECCHI:  Good morning, your Honor.  James Cecchi

10   of Carella Byrne.  I also have a smidgen of plaintiffs'

11   experience in this district and elsewhere.  I don't have a

12   huge inventory of cases personally.  I'm co-counsel with my

13   learned colleague on a number of cases.  I do anticipate,

14   however, having an inventory of about 50 to 100 cases.

15           JUDGE MARTINOTTI:  You know when you're on this side

16   of the bench when they refer to you as "learned" that means

17   you're getting reversed.

18           MR. CECCHI:  That means your clerk is getting

19   reversed.

20           MR. LONDON:  Good morning, your Honor.  Michael

21   London.  I have got mass tort experience.  I think the Court

22   is aware of some of it.  I believe we have 12 filed cases here

23   in this district, including the first filed case, the Puentes

24   case, and we're currently investigating about 250 cases.

25           JUDGE MARTINOTTI:  Okay.

Status Conference - 1/12/17

```
 1          MR. KATZ:  Seth Katz from Burg Simpson in Denver,
 2    Colorado.  Good morning, your Honor.  My firm probably has 50
 3    to 70 cases at this point.  I do have mass tort experience in
 4    other MDLs.  I have been lead counsel in and have served on
 5    executive committees in others cases so ...
 6          JUDGE MARTINOTTI:  Welcome.
 7          MR. GRAND:  Jeff Grand from Seeger Weiss.  I have
 8    mass tort experience before your Honor, as well as in several
 9    other cases.
10          MR. O'BRIEN:  Hi, Your Honor.  Tim O'Brien from Levin
11    Papantonio.  My firm represents 400 of the Invokana cases
12    filed.
13          JUDGE MARTINOTTI:  How many?
14          MR. O'BRIEN:  400.  The Brenda Friedman case has 100
15    of those.  That's a case that was removed from St. Clair, went
16    to Southern District of Illinois, there was a motion for
17    remand.  We're going to be formally withdrawing our motion to
18    remand that case now that it has been transferred by the JPML
19    here.  Mass tort experience quite a bit.  I was lead counsel
20    for the Fosamax jaw MDL in the Southern District of New York,
21    which is MDL 1789.  Served on several executive committees and
22    PSCs with these gentlemen and ladies in this courtroom.
23          Thank you, your Honor.
24          MR. EISBROUCH:  Good morning, Your Honor.  David
25    Eisbrouch from Eisbrouch Marsh in Hackensack.  I worked on
```

Status Conference - 1/12/17

1    several committees on mass torts for the last 15 years.  I'm

2    co-counsel with several firms in the room today, and I'm going

3    to let them speak for how many cases have been filed and how

4    many cases are pending totally.

5           Thank you, Your Honor.

6           MR. ALTMAN:  Good morning, your Honor.  Keith Altman

7    from Excolo Law in Southfield, Michigan.  We currently have

8    about 25 plaintiffs.  We have cases filed in State Court in

9    California, and we have about -- I don't know -- about 70

10   other cases that we will be filing -- based on agreement with

11   defense counsel -- we'll be filing in the MDL.  I have been

12   working on MDLs for a long time, and I kind of grew up on it

13   through law school all the way through.

14          So thank you, Your Honor.

15          JUDGE MARTINOTTI:  Welcome.

16          MR. WEBSTER:  Good morning, your Honor.  Jason

17   Webster from the Webster Law Firm.  And this is Avram Blair

18   from Avram Blair and Associates.  Collectively, your Honor,

19   our firms, along with Mr. Eisbrouch, approximately have

20   700 cases or contracts, I would say, with about another 300

21   pending at this time where we have had clients contact us and

22   it is in the process of getting those done.  We have cases

23   filed on three different fronts right now, California, St.

24   Louis, actually Pennsylvania, and in the MDL.

25          JUDGE MARTINOTTI:  Welcome.

Status Conference - 1/12/17

1          MR. WEBSTER:  And Avram and I went to law school

2     together, and our entire careers have been mass tort

3     pharmaceutical work.

4          JUDGE MARTINOTTI:  Thank you.

5          MR. SHKOLNIK:  Good morning, Judge.  Hunter Shkolnik.

6     Very nice to see you again.  I have a little bit of mass tort

7     experience.  I appeared before you before.  I don't know how

8     many cases we have because I left my briefcase in the car, but

9     I know it is in excess of 55 or 60 cases, and I think we have

10    11 on file here, and we look forward to practicing before you.

11         Thank you.

12         JUDGE MARTINOTTI:  Welcome.

13         MS. MASON:  Good morning, your Honor.  My name is

14    Danielle Mason.  I'm with the Beasley, Allen Law Firm in

15    Montgomery, Alabama.  I am currently the lead counsel for

16    Invokana at our firm, and we have approximately 60 to 70 cases

17    under investigation.  We do have one filed that was recently

18    transferred to the MDL.  I have significant mass tort and MDL

19    experience.  I have handled HRT cases, hernia mesh, TVM.

20    Also, I'm litigating the talcum power cases in St. Louis, so I

21    have been in trial all last year doing that.

22         JUDGE MARTINOTTI:  Welcome.  Sorry about the national

23    championship.

24         MS. MASON:  Oh, I'm still upset about that.

25         Ms. Dolejsi:  Good morning, your Honor, I'm Holly

Status Conference - 1/12/17

1  Dolejsi from Robins Kaplan, the Minneapolis office.  I'm also

2  the lead attorney on Invokana in my firm.  Right now we have

3  one case filed.  It is currently pending in the Eastern

4  District of Pennsylvania after being removed there, originally

5  filed in Philly State Court.  We have about 15 cases, and I

6  anticipate eventually having around 50.  We also have some

7  Farxiga cases, and I have been working in mass torts for six

8  years primarily doing Stryker/Rejuvenate before you in

9  New Jersey and then, also, I'm on a committee in the Benicar

10 MDL in Camden.

11        JUDGE MARTINOTTI:  Send my regards to Judge Frank,

12 please.

13        MS. DOLEJSI:  I will.

14        MS. KELLER:  Good morning, Your Honor.  I'm Jessica

15 Keller.  I'm from Bernstein Liebhard.  I'm stepping in for a

16 colleague, Dae Lee.  We have about eight filed cases, two in

17 the State Court of Philadelphia.  The other five are in the

18 MDL, and we anticipate about filing another 20.

19        JUDGE MARTINOTTI:  Thank you.

20        MS. GOLD:  Good morning, your Honor.  My name is

21 Danielle Gold.  I'm with Weitz and Luxenberg.  I'm working

22 with Ellen Relkin in our office on the Invokana cases.  We

23 have two cases presently filed before you in the MDL and about

24 20 cases in State Court Philadelphia.  We also have several

25 Farxiga cases on file, as well.

Status Conference - 1/12/17

```
 1          JUDGE MARTINOTTI:  I did review Ms. Relkin's
 2   submission and understand her position regarding the steering
 3   committees.
 4          MS. GOLD:  Thank you.
 5          MR. GOMEZ:  Good morning, your Honor.  John Gomez,
 6   like I said, from San Diego.  I have my own firm out there.
 7   We have a handful of cases only, none filed yet.  I plan to
 8   grow that number.
 9          JUDGE MARTINOTTI:  Okay.  Welcome.
10          MR. MANKOFF:  Good morning, your Honor.  Josh Mankoff
11   from Lopez McHugh.  Our nearest office is in Moorestown,
12   New Jersey.  We have about 40 cases filed.  Most of them were
13   in State Court in Philadelphia and removed to the Eastern
14   District at this point and then a few more have been filed in
15   State Court since then.
16          JUDGE MARTINOTTI:  Welcome.
17          MS. BRITTAIN LANDERS:  Good morning, your Honor.
18   Ashley Brittain Landers from Schlichter, Bogard, and Denton in
19   St. Louis.  I work with Roger Denton on these cases.  I have
20   had experience in MDLs, including Yaz and NuvaRing, which your
21   Honor served on, and we appreciate that.  We have, I guess, a
22   handful of cases that have been filed in the MDL directly.  We
23   have also -- I guess we're on the Friedman case out of
24   Southern District of Illinois, which has been transferred
25   here, and we have other cases under investigation.
```

Status Conference - 1/12/17

1    Thank you for having me.

2         JUDGE MARTINOTTI:  Welcome.

3         MR. IRPINO:  Good morning.  My name is Anthony

4    Irpino.  My law firm is in New Orleans, Louisiana.  Mardi Gras

5    is coming up shortly, so I don't know how I can get involved

6    right now, but I plan on doing it in the future.

7         Judge, I'm originally from Chicago.  The relevance of

8    that is that the Chicago Cubs won the World Series this year,

9    and no matter what happens in this case, everything will be

10   fine in my life.

11        Judge, we have one case on file, and we're currently

12   investigating approximately 35 other cases.  My experience in

13   MDLs is extensive going back 20 years, and I worked well and

14   cooperatively with many of the plaintiff lawyers in the room.

15        JUDGE MARTINOTTI:  Have you ever appeared before

16   Judge Fallon?

17        MR. IRPINO:  Yes.  I'm currently before Judge Fallon

18   in the Chinese drywall litigation, as well as a lot of other

19   litigations.  In the past the VIOXX litigation.

20        JUDGE MARTINOTTI:  He is certainly an icon in this

21   law type.

22        MR. IRPINO:  Yes, yes.  I did not have a chance to

23   file a formal application, but would be interested in

24   participating on behalf of the plaintiffs.

25        JUDGE MARTINOTTI:  Thank you.

Status Conference - 1/12/17

1        MR. PFLEGER:  Brian Pfleger.  I have extensive MDL

2   experience.

3        THE COURT:  I'm sorry, sir, put your name back on the

4   record.  I don't think the court reporter got it,

5        MR. PFLEGER:  Brian Pfleger from New Orleans.  I have

6   extensive MDL experience.  Been doing this for about 17 years

7   now working on Bair Huggers, Xarelto, Taxotere right now.  It

8   is nice to be here.

9        MR. STEELE:  Good morning, Judge.  Kevin Steele.  I'm

10  assisting Mr. Pfleger and Mr. Hingle.  Unfortunately, I have

11  no experience in any of these matters; however, like previous

12  counsel, I am from New Orleans, and I'm a part-time traffic

13  court judge, so if anybody is driving in New Orleans I got you

14  covered.

15        MR. SEEGER:  He just got himself a committee spot.

16        MR. ECKLUND:  Good morning, your Honor, Don Ecklund.

17  I work with Jim Cecchi at Carella Byrn.  I have more than a

18  decade of MDL mass tort litigation.  Work on a number of MDLs

19  across the country currently, and my mass tort experience goes

20  back to a clerkship with Judge Marina Corodemus.

21        JUDGE MARTINOTTI:  Anyone else on the plaintiffs'

22  side?

23        They're ganging up against you, counsel.  Defense?

24        MR. LEWIS:  Good morning, your Honor.  John Lewis

25  from Tucker Ellis and Cleveland for all of the defendants, and

─ Status Conference - 1/12/17 ─

 1    I have all of the cases for all of the defendants.

 2            MS. BENEDICT:  Good morning, your Honor.  Mollie

 3    Benedict, Tucker Ellis in Los Angeles.  Also, all defendants,

 4    all cases.

 5            MR. ZOGBY:  Good morning, your Honor.  Michael Zogby,

 6    Drinker Biddle and Reath.  Same as John and Mollie with all

 7    the cases.  Florham Park, New Jersey.

 8            JUDGE MARTINOTTI:  Welcome.  Counsel, again, welcome

 9    to New Jersey for those of you who have traveled.  For those

10    of you who have not appeared before me in an MDL or an MCL,

11    I'm going tell you about my practice, which I anticipate will

12    not change during the course of this litigation.

13            As a prior order has set out, I expect an agenda to be

14    submitted prior to our Case Management Conference, which will

15    form the basis of our conference and the order moving forward.

16    You'll see my order.  They changed the order on the website.

17    It said "CMO No. 1."  That's been changed to "Initial Case

18    Management Order."  The order that is going to be generated

19    today will be CMO No. 1, and they will be numbered

20    sequentially as we move forward.

21            The orders are broken down into various parts,

22    specifically compliance with prior orders, case management,

23    discovery, and other general information that's contained in

24    an order.

25            My thought process behind that is if someone were to

Status Conference - 1/12/17

1   pick up the order and just read them in order they'll see how

2   the case progresses.

3        So, the agenda will be submitted prior to the Case

4   Management Conference.  We will have a pre-meeting before we

5   go on the record with liaison counsel to discuss the

6   parameters of the Case Management Conference.  We will then go

7   on the record.

8        I am a proponent, as is Judge Goodman, of meet and

9   confers and resolving as many issues as you can without the

10  necessity of court intervention.  This is your litigation.

11  You can steer it however you deem fit.  You can work together

12  and cooperate and move toward an efficient, quick resolution

13  or you can litigate it, and Judge Goodman and I will be happy

14  to call issues as they become ripe for adjudication, but,

15  candidly, a resolution of the issues I think expedites the

16  litigation.

17       The parties, I know many of you here, and I know you'll

18  cooperate, and you'll resolve issues before they become

19  necessary for an adjudication.

20       I was going to come out here and order mediation.  I

21  have decided against that for this reason picking up just

22  where I left off.  I want the parties to talk to each other,

23  to meet and confer, and to think about mediation.  I don't

24  mean that to suggest that you're going to start settling cases

25  the day after a mediation is scheduled or a day after a

1   mediator is appointed.  My goal is to run two parallel tracks,

2   a mediation hopefully toward resolution as discovery is

3   progressing.  It worked well -- for those of you who were in

4   the Stryker case, it worked well in Stryker.  I see no reason

5   why it can't work here.  And, frankly, to have a mediator on

6   board early I think is beneficial to the extent that the

7   mediator will grow with the litigation, understand the

8   litigation, understand the dynamics of the litigation, develop

9   relationships with counsel, develop a trust level with counsel

10  and when, if at all, it becomes apparent that cases can start

11  to be resolved on the merits, so to speak, the mediator will

12  be there.  So, that's my intention, and I'm going to ask

13  counsel to meet and confer regarding mediation.

14        We did get some applications to be on steering

15  committees.  Has anyone spoken about that --

16            MR. SEEGER:  Your Honor --

17            JUDGE MARTINOTTI:  -- amongst yourselves?

18            MR. SEEGER:  -- Chris Seeger again.  Yes, we have

19  been -- the plaintiffs have been talking.  I would anticipate

20  we would be able to submit something I'm optimistic on consent

21  early next week.

22            JUDGE MARTINOTTI:  Okay.  Does that seem to be the

23  general consensus?  Everybody is shaking their head.

24        All right.  I'm going to ask counsel to meet and confer

25  and submit to the Court a proposed liaison counsel Steering

Status Conference - 1/12/17

1   Committee -- I'm going to refer you to my Case Management

2   Order, the initial Case Management Order, specifically

3   Document No. 8 at Paragraph 8 for the what I expect parties to

4   be doing if they're part of this committee.

5        You know, I understand that being part of a committee

6   is important for a variety of reasons.  Hopefully the common

7   goal is in the interests of justice and the best interest of

8   the client, though I do understand that there may be some

9   personal reasons to be part of this committee.  But understand

10  whether or not you're on the committee, you're still an

11  integral part of the litigation.  You're all leaders in a

12  variety of ways in your variety of capacities, and one thing

13  that I think counsel who have appeared before me know is I'm

14  very flexible and things are fluid and things can change as

15  the litigation progresses.  So I'm glad to see the plaintiffs

16  have been working together, and, hopefully, can get a

17  committee to me sooner rather than later.  Could we say by

18  next Friday?  Actually, why don't we say report back by next

19  Friday?

20       MR. SEEGER:  I think for sure -- we're very lucky.

21  We have a wealth of riches.  All these lawyers in this

22  courtroom are worthy of a committee spot, and they're all very

23  good.  I anticipate that going very well.

24       JUDGE MARTINOTTI:  And without telling you how I want

25  the committee constituted, we do want some -- we want

─── Status Conference - 1/12/17 ───

 1  diversity on the committee and a variety of other interests

 2  being represented.

 3          MR. SEEGER:  Yes, your Honor.

 4          JUDGE MARTINOTTI:  And if there's individuals that

 5  may not have the level of experience, hopefully they'll have

 6  an opportunity to participate in some way so they can get the

 7  level of experience and not be shut out of committees moving

 8  forward.

 9          MR. SEEGER:  I completely understand, and those goals

10  are our goals.  Thank you, your Honor.

11          JUDGE MARTINOTTI:  This side of the V?  I guess it is

12  a little easier.

13          MR. LEWIS:  Yes, your Honor.  I think we're all in

14  agreement.  We had the application process for this role, but

15  ultimately we determined that Mollie Benedict and I, John

16  Lewis, will be the lead counsel, and Mr. Zogby will be liaison

17  counsel if that's appropriate for the Court.

18          JUDGE MARTINOTTI:  We'll enter an order to that

19  effect.  So, ordered.

20          MR. LEWIS:  Thank you, your Honor.

21          JUDGE MARTINOTTI:  And understand liaison counsel is

22  really just the conduit of information between the Court and

23  to counsel.  It is certainly easier on your side -- there's

24  only three of you -- but to be fielding calls and letters from

25  counsel it just gets unwielding, so I'll ask whoever is

─── Status Conference - 1/12/17 ───

1    liaison to be the conduit between the Court and the lawyers.

2         There was an agenda, so what I propose to do now is we

3    will go over the agenda and then I'll break and I'll meet

4    with, I guess, the lawyers that are at the tables very

5    quickly, and then we'll come back on the record and enter a

6    formal order supplementing what I had just spoken about.

7         So, if we go to the proposed agenda -- and, again,

8    we're in the unique position because I was managing this

9    litigation before it was designated as an MDL, and I was

10   handling it as if it were an MDL, so we have made significant

11   progress through the hard work of counsel and Judge Goodman on

12   the discovery components.

13        With respect to orders entered since the last Case

14   Management Conference, our order is only going to reflect the

15   two orders that were entered regarding the protective order

16   regarding confidential information that was entered on

17   December 16th and the order regarding electronically stored

18   information, and I thank counsel for working those issues out.

19        Next part of the Case Management Conference -- my Case

20   Management Order I should say is liaison counsel we have

21   spoken about that, and we have spoken about mediation.

22        I have received the position statements.  Counsel,

23   thank you very much for your well thought out, comprehensive

24   position statements within the parameters that I had set

25   forth.  Talk to me about, B, Case Management Order No. 3

1   entered in November, initial forms and orders.

2        Counsel, you're meeting and conferring on that?

3        MR. SEEGER:  Yes, Judge.  I'm trying to see where we

4   are.  Some of this was kind of held up in anticipation of an

5   MDL being formed and getting other lawyers involved around the

6   country.  We have made substantial progress.  I don't

7   anticipate getting the rest of these items done taking all

8   that long as far as the master complaint and the short form

9   easily by the next CMC.  Is that okay with you?

10        MR. LEWIS:  I think that's very doable.

11        JUDGE MARTINOTTI:  Okay.  So, let's jump to that.  I

12   have two dates I propose, February 23rd or March 2nd.

13        MR. SEEGER:  I think on the plaintiffs' side we're

14   thinking the 23rd, if that works for the defense?

15        MR. LEWIS:  That's good for defendants, your Honor.

16        JUDGE MARTINOTTI:  Okay.  February 23rd it is.

17   Counsel, what I'm also going to do is Judge Goodman made a

18   very good suggestion this morning, that we schedule our case

19   management conferences going out perhaps for the rest of the

20   year.  I'm going to send out an e-mail with proposed dates.

21   I'm thinking Thursday seems to be a good day for everyone

22   traveling, so we'll find some Thursdays that work.  We'll send

23   it out, and see if those days work.  This way it will be far

24   enough.  In the summer I'll schedule two, but we're probably

25   only going to have one, unless there's a real issue.  I tend

Status Conference - 1/12/17

1  to think August would be -- you know what, we will not have a

2  Case Management Conference in August just in case this is

3  driving your vacation plans, so plan on spending some time

4  with your families in August, unless you want to tell your

5  families you need to be in New Jersey in which case maybe ...

6       So with respect to discovery, master complaints, you'll

7  meet and confer on those issues and advise the Court on a

8  rolling basis as they become --

9       MR. SEEGER:  And just for the Court's information, we

10  have been talking about these things, and now that we have

11  everybody, we can finalize.

12       JUDGE MARTINOTTI:  Okay.  The case list, I know we

13  have received a case list from both counsel.  We'll coordinate

14  that with the clerk's office to make sure we actually have the

15  cases.  We have spoken about organization of plaintiff,

16  organization of defendant.  The status of the orders.

17       Talk to me about the status of the litigation.  One

18  thing that has raised a question is in the agenda it says,

19  "Administrative issue regarding classifying cases already

20  pending in the District of New Jersey as MDL cases."  What

21  does that mean?

22       MR. SEEGER:  That's a good question.

23       MR. ZOGBY:  Your Honor, on that point there are a

24  number of District of New Jersey direct filings that have not

25  been associated with the MDL.

Status Conference - 1/12/17

1          JUDGE MARTINOTTI:  Okay.

2          MR. ZOGBY:  So we reached out to the clerk's office,

3   but absent direction from your Honor or from the JPML, the

4   clerk is not going assign them to the MDL, so we wanted to

5   raise that administrative issue with you.

6          JUDGE MARTINOTTI:  Do we have a list of those cases?

7          MR. ZOGBY:  We identified them on our case list that

8   we submitted to your Honor with our position statement.

9   There's about 21 of those such cases, if we can talk about

10  that.

11         THE COURT:  All right.  So in the order we'll say

12  that the Court will review the list, confer with the clerk,

13  and assign those cases to the MDL.

14         MR. ZOGBY:  Thank you.

15         JUDGE MARTINOTTI:  What's happening in Pennsylvania?

16  Who wants to talk to me about that?

17         MR. SEEGER:  Again, if there's somebody in this

18  courtroom that knows more than I do, come on forward, maybe

19  John, but I understand there are a bunch of cases that Ellen

20  Relkin's firm has that are in Federal Court, and they're

21  moving for remand back to State Court.

22         MR. LEWIS:  I'll start off, and Mr. Mankoff I'm sure

23  will supplement.  So, in the Eastern District of Pennsylvania

24  defendants removed approximately 106 cases that had been filed

25  in Philadelphia Common Pleas Court under CAFA's mass action

Status Conference - 1/12/17

1    removal statute.  Yesterday we had a hearing on the motion for

2    remand -- evidentiary hearing, actually -- on the motion for

3    remand and Judge Goldberg is taking the motion under

4    advisement at this time.

5            JUDGE MARTINOTTI:  Okay.

6            MR. MANKOFF:  I would just add that there's also a

7    motion to transfer pending under Section 1404(a) to this Court

8    that plaintiffs are opposing, and that is still in the

9    briefing process.

10           JUDGE MARTINOTTI:  And that's before Judge Goldberg,

11   also?

12           MR. MANKOFF:  It is before Judge Goldberg.

13           JUDGE MARTINOTTI:  I spoke to Judge Goldberg several

14   weeks ago, so let's play this out, if the cases are remanded,

15   that's the end of the inquiry, correct?

16           MR. LEWIS:  Correct.

17           JUDGE MARTINOTTI:  To State Court, I should say.

18           MR. LEWIS:  Right.

19           JUDGE MARTINOTTI:  If they're not, then the next

20   issue is should they be transferred here?

21           MR. LEWIS:  Correct.  And we have two ways that that

22   could happen.  Under Section 1404 Judge Goldberg could find

23   that it is, whatever, for the convenience of the parties the

24   cases could be transferred to this Court.  That's Judge

25   Goldberg's decision.  We aren't entitled to automatic transfer

1    under Section 1407 because it is a mass action removal if more

2    than half of the plaintiffs agree, however, to transfer then

3    they would be transferred to this Court.

4           JUDGE MARTINOTTI:  Okay.  The discovery and pretrial

5    schedule, counsel will continue to meet and confer on that and

6    address any discovery-related issues to Judge Goodman.  There

7    was a note for a science day.  Defendants requested it.  I

8    think they're useful.  I think they're beneficial.  I find

9    them to be very helpful.  Do the plaintiffs object?

10          MR. SEEGER:  No.

11          JUDGE MARTINOTTI:  Oh, so, we'll --

12          MR. CECCHI:  It is just a question of scheduling.

13          JUDGE MARTINOTTI:  You know, meet and confer.  Try to

14   get a schedule together.  Try to get a parameter of what

15   you're going to put together.  In the past I have limited them

16   to two hours on each side.  If you think that's enough time,

17   let me know.  Obviously, a stipulation is anything that is

18   presented, submitted, said during a science day is not to be

19   utilized in any fashion as the litigation moves forward.  It

20   is just an informational session only with no evidentiary

21   weight.

22          Once you come up with a date, let me know, and unless

23   there's an objection I will invite the State Court judges to

24   come, as well.  It may be beneficial for them.

25          MR. SEEGER:  We don't object, and, in fact, we got to

Status Conference - 1/12/17

1  speak only for a minute or two about what that might look

2  like, so we have already started the meet and confer process.

3           JUDGE MARTINOTTI:  We'll have it here.  So, does

4  anybody need to be heard?  What I propose now is we'll go into

5  the conference room just to talk for a few minutes with, I

6  guess, interim liaison counsel.

7           MR. SEEGER:  Judge, I do have one minor issue.  I

8  don't know if we had a chance to talk with John and his group

9  about it yet, but the idea of allowing people to directly file

10  in this Court.  It will save the hassle of people having to

11  file in a Federal Court somewhere else in the country and then

12  have them transferred -- tagged and transferred through the

13  panel.  Also, the fact that the defendant is home based here.

14  It seems to me a lot -- but I haven't had a chance to speak to

15  John.

16           MR. LEWIS:  Your Honor, the direct filing makes a lot

17  of sense, but there are some details of a direct filing order

18  that need to be thought through, including choice of law

19  principles and some things like that that have caused at least

20  some consternation in prior cases, so I would love to meet and

21  confer on that issue and have a proposal.

22           JUDGE MARTINOTTI:  Can't the order be crafted to the

23  extent that, you know, parties acknowledge venue in this

24  matter is properly St. Louis.  It is being filed here

25  directly.  Should there be a remand back for trial it goes

Status Conference - 1/12/17

1    back there, and the law would apply as if originally filed

2    there.  Now, that doesn't say what the choice of law is.

3         MR. SEEGER:  Right.  Yes, those are some of the

4    issues we would talk through.  I think it is simplified by the

5    fact that the cases are in New Jersey, and the defendants are

6    here, but we'll talk about it.

7         JUDGE MARTINOTTI:  Right.  Anything further?  Okay.

8    We will take a brief recess.  I'll see interim liaison counsel

9    and defense counsel in the jury room, and then we'll come back

10   and enter an order and let you start your long weekend.

11        Thank you.

12        (A recess was taken at 11:07 a.m.)

13        (Back in session at 12:10 p.m.)

14        JUDGE MARTINOTTI:  You can all be seated, counsel.

15        Okay.  We are back on the record.  For purposes of the

16   record, myself and Judge Goodman met with interim liaison

17   counsel and defense counsel in chambers to talk about the

18   order that was going to be entered today, which, in essence,

19   was what was said on the record, but now in a form of order.

20        Without getting specific, the one issue that came up

21   regards the preservation order.  There may have been a

22   disconnect during our prior on the record session.  Under Case

23   Management Roman numeral III(D) it talks about a preservation

24   order, which I was going to strike out.  Counsel indicated

25   that there was a prior order, specifically Document 34,

─── Status Conference - 1/12/17 ───

1    addressing a preservation order.  I misunderstood what he

2    said.  So for the record, Case Management Section III(D) does

3    talk about a preservation order, however, for purposes of

4    completion and for the record the Court will note and orders,

5    though it won't be in this order, that Document No. 34,

6    subsection Roman numeral II states as follows:  "Preservation

7    order:  The parties have met and conferred on a preservation

8    order.  The defendants have represented that they are in

9    compliance with the Federal Rules and applicable case law

10   regarding the preservation of materials and maintain there is

11   no need for a formal order."

12        Is that still true and accurate, counsel?

13        MS. BENEDICT:  Yes, your Honor.

14        THE COURT:  So that will be part of the record

15   embodied in the transcript, though not necessarily set forth

16   in the order.  Does that satisfy counsel?

17        MR. GRAND:  Yes, your Honor.

18        JUDGE MARTINOTTI:  Thank you for bringing that to our

19   attention.  Anything else on the terms of the order, which we

20   did set forth on the record?

21        MR. SEEGER:  We're good, your Honor.

22        JUDGE MARTINOTTI:  As I indicated, we will get to you

23   within the next couple of days a list of proposed Case

24   Management Conference days moving forward through the end of

25   December.  I anticipate they will be on Thursdays.  We'll try

Status Conference - 1/12/17

1   to keep four to five weeks in between them.  There may be a

2   holiday or two that needs it to be moved.  Anything further

3   from defense counsel?

4           MR. LEWIS:  No, your Honor.

5           JUDGE MARTINOTTI:  Plaintiffs' counsel?

6           MR. SEEGER:  We're good, your Honor.

7           JUDGE MARTINOTTI:  Okay.  Counsel, thank you very

8   much.  My best for a safe travel back from whence you came.  I

9   look forward to working with you, and just for the record,

10  just one more time, no objection if I contact counsel --

11  liaison counsel ex-parte for settlement purposes?

12          MR. LEWIS:  No objection on defendant's side.

13          MR. SEEGER:  No objection on plaintiffs' side.

14          JUDGE MARTINOTTI:  Counsel, thank you very much.

15  Safe travels.  Nice meeting you.

16          (Proceedings concluded at 12:15 p.m.)

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3

4

5     I, **REGINA A. BERENATO-TELL, CCR, CRR, RDR**, Official

6  United States Court Reporter and Certified Court Reporter,

7  Certified Realtime Reporter of the State of New Jersey,

8  Certified Realtime Reporter do hereby certify that the

9  foregoing is a true and accurate transcript of the testimony

10  as taken stenographically by and before me at the time, place

11  and on the date hereinbefore set forth.

12     I do further certify that I am neither a relative nor

13  employee nor attorney nor counsel of any of the parties to

14  this action, and that I am neither a relative nor employee of

15  such attorney or counsel and that I am not financially

16  interested in this action.

17

18

19

20

21

22

23

24     **/S/ REGINA A. BERENATO-TELL, CCR, CRR, RDR**
     UNITED STATES DISTRICT COURT REPORTER
25     Date: January 24, 2017