# EXHIBIT A

THE DOUGLAS & LONDON INVOKANA QSF

# THE QUALIFIED SETTLEMENT FUND AGREEMENT

## ARTICLE I

NAME AND PURPOSE OF THE FUND

1-1 Name.  This Qualified Settlement Fund shall be known as The Douglas & London Invokana QSF (hereinafter "Fund") and is intended to qualify as a Qualified Settlement Fund within the meaning of Section 468B of the United States Internal Revenue Code and United States Treasury Regulation 1.468B-1.  The Fund also constitutes a trust under New York state law.

1-2 Purpose.  The purpose of the Fund is to accept, hold and distribute funds paid by Janssen Pharmaceuticals, Inc., Janssen Research and Development, LLC., Johnson & Johnson Co., Janssen Ortho, LLC, Mitsubishi Tanabe Pharma Holdings America, Inc., Mitsubishi Tanabe Pharma Development, America, Inc., Tanabe Research Laboratories USA, Inc., and Mitsubishi Tanabe Pharma Corp. (hereinafter "J&J") in consideration of the settlement of claims under the terms of Master Settlement Agreements ("MSAs") between Douglas & London, P.C. ("Plaintiffs' Counsel"), the Settling Claimants (as that term is defined in the MSAs), and J&J, and a full and final release of claims as specified in the MSAs and the Confidential Releases being supplied pursuant thereto.  The legal entity known as a Qualified Settlement Fund is authorized under Section 468B of the Internal Revenue Code of 1986 (Title 26, United States Code), as amended ("IRC") and Income Tax Regulations ("Regulations") §§ 1.468B-1, *et seq*.  This fund exists to resolve or satisfy the claims, actions, and lawsuits arising out of an alleged tort, or violation of law, as provided for in Regulations § 1.468B-1.  Before settlement funds may be distributed to Settling Claimants, matters such as Settling Claimants' allocations, approvals for minors' compromises, court approvals, and potential third party claims and liens need to be addressed.  It is in the best interests of the Settling Claimants under the MSAs that settlement monies be paid into the Fund while those issues are being resolved.

1-3 Duties.  The Duties of the administrator for the Fund ("QSF Administrator") shall be as defined in the MSAs and this Qualified Settlement Fund Agreement ("Agreement").

1-4 Government Authority.  This Fund and its Administrator remain under the continuing jurisdiction of the United States District Court for the District of New Jersey (the "Court"), and this Fund shall be administered and operated pursuant to this Agreement and the MSAs.

## ARTICLE II

PAYMENTS TO THE FUND

2-1 Court Approval.  The Court has approved the establishment of the Fund pursuant to IRC section 468B and the terms of this Agreement.

2-2 Payment.  In accordance with the terms of the MSAs, J&J will pay the settlement consideration to the Fund. These payments, and the earnings thereon, will be held by the Fund

until disbursed in accordance with the terms of the MSAs for payments to Plaintiffs or their designees, to attorneys for fees and costs, to lien holders, to governmental entities having an interest in the settlement proceeds, to the Special Master to be appointed later, to the Fund administrator, and to federal and state taxing authorities for tax liabilities of the fund.

2-3 No Further Obligation.  Following the above contributions to the Fund, J&J shall not have any further obligation to contribute to the Fund.

2-4 Nature of Contributions.  All contributions to the Fund shall be made in immediately available funds.  Contributions made to the Fund shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

ARTICLE III

DISPOSITION OF THE FUND

3-1 Corpus of the Fund.  The corpus of the Fund shall include all sums transferred to the Fund pursuant to the terms of the MSAs and this Agreement.

3-2 Payment of Principal.  Distributions from the Fund shall be made solely in accordance with the terms of the MSAs.  During the term of the Fund, the Administrator shall pay or apply part or all of the principal of the Fund in order to settle the actions, disputes, and claims of the Settling Claimants under the MSAs.  This includes paying the legal fees, costs, and expenses incurred by the Settling Claimants in prosecuting claims, as well as any liens on or other claims to amounts payable in settlements with Settling Claimants.  The QSF Administrator is not responsible for the payment of any claims other than those approved by QSF Administrator, the Special Master, or the Court, pursuant to the terms of the MSAs.

3-3 No Authority to Conduct Business.  The purpose of the Fund is limited to the matters set forth in Articles I and III hereof, and this Agreement shall not be construed to confer on the QSF Administrator any authority to carry on any business or activity for profit.

3-4 Termination of the Fund.  The Fund may be terminated upon the earlier of: (i) the date on which no assets remain in the Fund; (ii) the date on which the Fund has discharged all obligations required of it under the MSAs; or (iii) by a Court Order(s).  Whenever the QSF Administrator determines that the Fund may be properly terminated pursuant to this Article, the QSF Administrator may submit a petition for termination of the Fund to the Court.  After reviewing the petition, the Court may terminate the Fund or may order the Fund to undertake such further actions as the Court deems necessary and appropriate.  Subject to the MSAs, the QSF Administrator shall finalize distributions to Settling Claimants and any other persons or entities entitled to share in such distributions, including amounts reasonably necessary and approved by the Court to compensate the QSF Administrator and its professional agents for unpaid services and costs of administration, and any funds that may be reserved for the payment of taxes or outstanding charges or fees, upon termination of the Fund.  The QSF Administrator is authorized, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund and

thereafter the QSF Administrator is discharged from any further responsibility with respect to the Fund.

3-5 <u>Amendments, Alterations, and Revocation</u>.  The Fund may be amended or altered from time to time, or revoked by an instrument in writing executed by J&J, Plaintiffs' Counsel and the QSF Administrator and approved by Order of the Court.

3-6 <u>Allocation Plan and Distributions</u>.  The QSF Administrator shall distribute to Settling Claimants the amounts due and owing to them from the Fund available for distribution pursuant to the terms of the MSAs.  The QSF Administrator shall not make any distribution to or for the benefit of a minor or incompetent person, including payment of attorney fees and expenses, without an order from a court of competent jurisdiction approving the disbursement.

3-7 <u>Interests in the Fund</u>.  No interest in this Fund may be assigned or transferred in any manner, unless agreed and approved in writing by J&J and Plaintiffs' Counsel and ordered by the Court.  In addition, such interests shall not be voluntarily or involuntarily subject to any type of encumbrance, to the maximum extent allowable by law.  This shall include, but not be limited to, encumbrances associated with claims of any creditor (in or outside of bankruptcy or other insolvency statutory schemes) under any federal, state, or local laws.  Any such interest, if any, shall be made available only upon termination of the Fund.

ARTICLE IV

<u>ADMINISTRATOR MANAGEMENT</u>

4-1 <u>Initial Administrator/Trustee</u>.  The initial administrator and trustee of this Fund shall be Archer Systems, LLC, 1775 St. James Place, Suite 200, Houston TX 77056 ("QSF Administrator").  The QSF Administrator is independent of J&J, Plaintiffs' Counsel and is Court appointed.

4-2 <u>Investment</u>.  Except as set forth below in Section 4-4 the QSF Administrator shall invest the principal of the Fund and keep the Fund invested in (i) United States Agency, Government Sponsored Enterprises or Treasury securities or obligations (or a mutual fund invested solely in such instruments); (ii) cash equivalent securities including SEC registered money market funds and collateralized money market accounts; and/or (iii) deposit and similar interest-bearing, or non-interest bearing, accounts subject to Federal Depository Insurance Corporation protections as available.  The fundamental goal of the QSF Administrator is to preserve the funds within the Fund, reduce investment costs and fees, and earn a reasonable but safe return on investment of those funds.

4-3 <u>Definition of Money Market Account</u>.  For purposes of this Article, "money market account" shall mean a money fund whose objectives are (a) current income consistent with liquidity and low risk, (b) the maintenance of a portfolio of high quality, short-term money market instruments, and (c) maintenance of a constant $1.00 net asset value per share.  All investments shall be made so as at all times to provide sufficient liquidity to meet the anticipated cash needs of

the Fund. In investing, reinvesting, and exchanging, selling, and managing the Fund, the QSF Administrator shall discharge its duties with respect to the Fund solely in the interest of the accomplishment of the purposes and objectives of the Fund.

4-4 <u>Collection of Funding Instrument.</u> QSF Administrator is authorized to deposit funding instrument(s) into an FDIC insured bank, approved by J&J and Plaintiffs' Counsel, even though the amount of the deposit exceeds the current FDIC insured deposit amount for that single Qualified Settlement Fund account for such time as it takes to collect on said funding instrument. Once the funding instrument is collected and made available by the depository bank, the QSF Administrator shall as soon as practical move the proceeds into one or more of the accounts described in 4-2 above.

4-5 <u>Reporting to the Court</u>. The QSF Administrator shall report to the Court in writing with respect to any matter arising from the administration of the Fund that the QSF Administrator deems advisable to bring to the attention of the Court or upon request of the Court. The QSF Administrator shall create and maintain records of the QSF Administrator's activities arising from this Agreement and any orders of the Court. The records shall be created and maintained in a manner that is ordinary and customary for the obligations imposed by the MSAs, any Court Order, and this Agreement. Copies of the records shall be provided to the Court upon its request, subject to any privileges or other protections. Any privileged or otherwise protected material shall be provided under seal to the Court. Upon termination of the Fund, all privileged or otherwise protected records shall be returned to the QSF Administrator.

ARTICLE V

<u>EXPRESS POWERS OF ADMINISTRATOR</u>

Without in any way limiting the power and discretion conferred upon the QSF Administrator by the other provisions of this Agreement, the QSF Administrator is expressly authorized and empowered as hereinafter set forth:

5-1 <u>Payment of Administrative Expenses and Costs</u>. As agreed and approved in writing by the Court, the QSF Administrator shall pay charges, taxes and expenses imposed upon or incurred in connection with the administration of the Fund in the discharge of its obligations under this Agreement, including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, which are incurred to maintain and administer the Fund. All such payments shall be made from Fund assets.

5-2 <u>Retention of Property</u>. The Fund shall hold the property in the manner delineated in the MSAs and in this Agreement. As agreed and approved in writing by J&J and Plaintiffs' Counsel and ordered by the Court, the QSF Administrator can hold a different type of property in the Fund than anticipated by this Agreement. If the Court so orders such a holding, the QSF Administrator is not responsible for loss in the value of said holding. (e.g. a transfer of a Bond to the Fund which is ordered held and interest rates move in a manner which causes a loss of principal).

5-3 <u>Preservation of Principal</u>.  Notwithstanding any other provision in this Agreement, the QSF Administrator shall at all times hold, manage, and invest the assets of the Fund in a manner designed to preserve the principal of the Fund for the purposes set forth in this Agreement.

5-4 <u>Grant of Powers Limited</u>.  The QSF Administrator shall not be empowered to dispose of the Fund for less than adequate and full consideration in money or money's worth unless expressly ordered by the Court.

5-5 <u>Retention of Investment Advisor and Other Consultants</u>.  The QSF Administrator has the power to engage the services of investment advisors, accountants, custodians, managers, attorneys, or other consultants or agents, as is reasonably necessary to assist with the management of investments and the administration of the Fund.  Payment for such services will be made from Fund assets.

5-6 <u>Execution of Documents</u>.  Subject to the MSAs, the QSF Administrator has express authority to make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments, including but not limited to, any release of any parties to claims or litigation from which this Fund arose.  Such agreements may also include settlement agreements and qualified assignment agreements to effect settlements governed by IRC §§ 104(a)(2) and 130, as may be necessary or appropriate to carry out the powers herein granted or other assignments as ordered by the Court.

5-7 <u>Litigation</u>.  The QSF Administrator may initiate or defend, at the expense of the Fund, any litigation relating to or affecting the Fund, or the Administrator's obligations under the Fund, and to initiate or defend any litigation relating to the Fund, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the Fund.  If a specific lien or garnishment is held against a single Settling Claimant, it shall be the responsibility of that Settling Claimant to handle the matter and his/her funds shall be held in the Fund until said matter is resolved.

5-8 <u>Compliance with Law</u>.  The QSF Administrator is empowered to comply with all requirements imposed by applicable law, rule, or regulation in conformity with the MSAs.

5-9 <u>Discretion in Exercise of Power</u>.  Subject to the MSAs, the QSF Administrator may do any other acts it deems proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon it by this Agreement.

5-10 <u>Modification of This Agreement</u>.  The QSF Administrator shall be empowered to petition the Court for modification of the Articles of this Agreement (including Attachments hereto) if the QSF Administrator determines that such modifications are necessary to conform to legal, tax, or administrative requirements.

## ARTICLE VI

ADVICE OF COUNSEL

The QSF Administrator may from time to time consult with counsel with respect to any question arising as to compliance with this Agreement. The QSF Administrator shall be fully protected, to the extent permitted by law in acting in reliance upon the advice of counsel.

## ARTICLE VII

COMPENSATION FOR ADMINISTRATION

For services performed as QSF Administrator, the QSF Administrator shall receive a fee per settling claimant for the accounting and administration of the Fund as agreed to between J&J and the QSF Administrator; provided, however, that the QSF Administrator may charge the Fund $1,000.00 per year for any tax return preparation necessary to fulfill its tax obligations. Any successor QSF Administrator approved by Order of the Court shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable. Such compensation may be paid without additional Court approval. Payment for such services will be made from Fund assets.

## ARTICLE VIII

SUCCESSOR QSF ADMINISTRATOR

8-1 _Vacancy Caused by Resignation or Removal_. The QSF Administrator may resign for cause or no cause at any time upon written notice delivered to J&J and Plaintiffs' Counsel and the Court having jurisdiction over the Fund. Such resignation shall become effective upon the written acceptance of the appointment of a successor QSF Administrator. J&J and Plaintiffs' Counsel, subject to approval by the Court, shall have the power to appoint a successor QSF Administrator. If a successor QSF Administrator is not appointed within sixty (60) days, the QSF Administrator shall have the power to appoint a corporate QSF Administrator qualified under local Court rules to perform Fund services as successor QSF Administrator or it shall have the power to petition the Court to appoint its successor. All of the QSF Administrator's fees and expenses (including reasonable attorneys' fees) attributable to the appointment of a successor QSF Administrator shall be paid by the Fund. Death of the QSF Administrator automatically terminates the role, and J&J and Plaintiffs' Counsel shall appoint a successor QSF Administrator, subject to approval by the Court. Any successor QSF Administrator shall have the same powers, authorities, and discretions as though originally named as the QSF Administrator.

8-2 _Acceptance of Appointment by Successor QSF Administrator_. Unless otherwise ordered by the Court, acceptance of appointment as a successor QSF Administrator shall be in writing and shall become effective upon receipt by the Court of notice of such acceptance. Each successor QSF Administrator shall have all the rights, powers, duties, authority, and privileges as if initially named as a QSF Administrator hereunder.

8-3 <u>Preservation of Record of Changes to QSF Administrator</u>. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Agreement in the custody of the Court.

## ARTICLE IX

### INDEMNIFICATION

Each QSF Administrator, whether initially named or appointed as a successor QSF Administrator, acts as a QSF Administrator and not personally. With respect to any contract, obligation, or liability made or incurred by the QSF Administrator in good faith, while the QSF Administrator is complying with the terms of this QSF Agreement, the prudent investor rule, or any valid Court order, all persons shall look solely to the Fund and not to the QSF Administrator personally. The QSF Administrator shall not incur any liability, personal or corporate, of any nature in connection with any act or omission of the QSF Administrator in the administration of the Fund or otherwise pursuant to this QSF Agreement unless the QSF Administrator commits fraud, acts negligently, or otherwise breaches a term of his appointment. The QSF Administrator initially named, and any successor QSF Administrator shall be indemnified and held harmless by the Fund, so long as the QSF Administrator complies with the terms of the MSAs and this QSF Agreement, the prudent investor rule, and any valid Court Order. This indemnification and hold-harmless provision shall cover all expenses reasonably incurred by such QSF Administrator in defense of the aforementioned acts or omissions of the QSF Administrator.

## ARTICLE X

### CHOICE OF LAW

This agreement has been created and accepted by the QSF Administrator of the Fund and this Agreement's validity, construction, and interpretation, and the rights created hereunder, shall be governed by the laws of the State of New Jersey.

## ARTICLE XI

### INTERPRETATION

As used in this Agreement, words in the singular include words in the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine, and neuter. The descriptive headings for each article of this Agreement shall not affect the interpretation or legal efficacy of this Agreement. It is agreed that neither the act of entering into this Agreement nor any contribution to the Fund nor any action taken under this Agreement shall be deemed to constitute an admission of any liability or fault on the part of the Administrator or J&J, nor does it continue a commitment or agreement, either express or implied, by any or all of them to undertake any further activities outside the scope of the MSAs or this Agreement. This Agreement is to be construed so as to be consistent with the terms of the MSAs and the definitions contained therein.

## ARTICLE XII

SEPARATE DOCUMENTS

  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Each provision in this Agreement is valid and severable and enforceable to the fullest extent permitted by law.

## ARTICLE XIII

TAX ISSUES

  13-1 *Generally*. The parties intend that the Fund shall be a Qualified Settlement Fund under IRC § 468B and Regulations §§ 1.468B-1, *et seq*. The QSF Administrator shall take no actions that are inconsistent with the Fund's status as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, 26 U.S.C. Section 468B, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5. Further, the QSF Administrator may petition the Court to amend, either in whole or in part, any administrative Article of this Agreement, which causes unanticipated tax consequences or liabilities inconsistent with the foregoing. J&J shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. Section 1.468B-1(d)(1). The QSF Administrator shall be classified as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3), 26 C.F.R. Section 1.468B-2(k)(3).

  It is further intended that all transfers to the Fund will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Internal Revenue Code, 26 U.S.C. Section 461(h)(1), and Regulation Section 1.461-1(a)(2), 26 C.F.R. Section 1.461-1(a)(2). As such, J & J shall not be taxed on the income of the Fund. The Fund shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it. In computing the Fund's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Fund, including, without limitation, state and local taxes, and legal, accounting, and actuarial fees relating to the operation of the Fund. All such computations of the Fund's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treasury Regulation Section 1.468B-2(b)(1)-(4), 26 C.F.R. Section 1.468B-2(b)(1)-(4). The QSF Administrator shall pay all taxes and associated expenses with those taxes from the Fund without the need of a Court Order.

  13-2 *Tax Preparation, Reporting, and Withholding Requirements*. The QSF Administrator shall cause to be filed, on behalf of the Fund, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k), 26 C.F.R. Section 1.468B-2(k). Furthermore, in accordance with the provisions of Treasury Regulation Section 1.468B-2(l), 26 C.F.R. Section 1.468B-2(l), the QSF Administrator shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding

requirements. The QSF Administrator may retain independent, certified public accountants to consult with and advise the Administrator with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance withholding requirements. J & J (or some other person on behalf of J & J) shall supply to the QSF Administrator and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. Section 1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which J & J makes a transfer to the Fund. The QSF Administrator shall, upon request, prepare and deliver to J & J and Plaintiffs' Counsel, within ten days of any such request, financial statements for the Fund, including receipts and disbursements and earnings.

13-3 <u>Savings Provision</u>. Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Internal Revenue Code Section 468B, as amended, together with any and all Treasury Regulations and Internal Revenue Service Notices, Announcements and directives thereunder, such offending Article of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the Administrator. The overarching purpose of this Agreement is to create a Qualified Settlement fund that is at all times in compliance with Internal Revenue Code Section 468B and all administrative authority and announcements thereunder. In the event that this Section 13-3 applies to render an offending Section null, void, or of no effect, the remainder of this Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

## **ACCEPTANCE OF FUND**

Archer Systems, LLC, named as the QSF Administrator of The Douglas & London QSF, accepts this appointment and the assets to be transferred to the Fund to be held, administered and distributed as provided in this Agreement.

WITNESS the execution hereof of the QSF Administrator on this 3rd day of October, 2018.

By: _____
 The Douglas & London Invokana
 QSF Administrator

**Agreed to by Douglas & London, P.C.:**

By: _____
 Michael A. London, Esq.
 Partner